UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Jomari E. Alexander, Sr.,                                    Civil No. 13-796 (SRN/FLN)

                    Plaintiff,

                                                             **REPORT AND**
                                                             **RECOMMENDATION**

          v.

Steele County Jail et al.,

                    Defendants.

_____

Jomari E. Alexander, Sr, *pro se*.
Jason M. Hill for Defendants.

_____

   **THIS MATTER** came before the undersigned United States Magistrate Judge on the

parties' cross motions for summary judgment (ECF Nos. 46 and 60). Also before the Court is

Plaintiff's motion to grant judgment and/or sanctions (ECF No. 56).[1] The matter was referred to the

undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1.  For

the reasons set forth below, the Court recommends that Plaintiff's motions be **DENIED** and

Defendants' motion be **GRANTED**.

## I.   BACKGROUND

### A.   Steele County Detention Center.

---

[1]

     Plaintiff filed his motion for summary judgment on January 17, 2014. Mot. for
     Summ. J. and/or Sanctions, ECF No. 46. On January 30, 2014, prior to the
     Defendants' response deadline as specified in Local Rule 7.1(c), Plaintiff filed a
     motion to grant judgment and/or sanctions based on a failure to timely defend. Mot
     to Grant Summ. J. and/or Sanctions, ECF No. 56. Because Defendant's motion for
     summary judgment was timely filed on  February 7, 2014, Plaintiff's motion is
     **DENIED**.

This 42 U.S.C. § 1983 action arises from incidences Plaintiff Jomari E. Alexander, Sr. ("Alexander") experienced while detained at the Steele County Detention Center in July 2010. *See generally,* Compl., ECF No.1-1. At the time in question, Alexander was an inmate in the custody of the Minnesota Department of Corrections ("DOC"). Hill Decl., Ex. A, ECF No. 63-1. On June 24, 2010, the DOC transferred Alexander from the Minnesota Correctional Facility-Faribault to the Steele County Detention Center in accordance with an inmate transfer agreement whereby the county center would house state overflow inmates. Hammann Decl. ¶ 2, ECF No. 64.

Upon Alexander's arrival at the detention center, correctional officers placed him in the special management unit at the direction of Jail Administrator Dan Schember. *Id*.; Schember Decl. ¶ 7, ECF No. 65. Schember based this placement decision on "Alexander's history and the recommendations of my sergeants and staff." *Id*. The detention center's special management unit consisted of two separate areas of confinement, with one area utilized for inmates in disciplinary segregation and the other area designed for inmates in need of heightened supervision or protective custody. ECF No. 64 ¶ 3. Alexander was not originally housed in the special management unit for disciplinary segregation purposes. *Id*.

During the course of Alexander's confinement at the detention center, the center employed a "kiosk" system which permitted inmates to communicate with jail staff and launch informal complaints. ECF No. 65 ¶ 5. Each housing pod contained a kiosk and the system allowed for inmates to direct their messages to specific staff members. *Id*. Staff members manually logged into the system to oversee inmate messages, as the system did not automatically route messages to individual jail staff. *Id*.

**B.      July 9, 2010 pat-down search.**

At approximately 10:30 a.m. on July 9, 2010, Alexander returned to his housing unit with a group of inmates from a programming activity which took place in another unit. Kubat Decl. ¶ 4, ECF No. 67. Detention center policy required that inmates undergo a pat-down upon returning to a housing unit. *Id*. Defendant Officer Kubat completed pat-downs of the returning inmates. *Id*. ¶ 5. Alexander alleges that Officer Kubat inappropriately handled Alexander's penis and testicles during the course of his pat down, stating that"Al Kubat sexually assaulted me during a routine pat search by grabbing my penis and testicles and pulling them before I forced him to let go by attempting to grab his right hand (the hand that was holding my genitalia)." ECF No. 46 at 5. At 11:20 a.m., Alexander logged the following complaint in the kiosk system, directed to Jail Administrator Dan Schember:

> Mr. Schember, this is Jomari and I would request that you speak with Officer Kubat. He purposely grabbed my genitalia. I respect the need for pat searches and submit to them without complaint, however I will not be molested and I would appreciate your intervention because I will not allow him to cup my genitalia again. Thank you.

ECF No. 48-1, Ex. 7.

Officer Kubat's account of the incident differs. Officer Kubat recounts that upon patting down Alexander's right leg and thigh, Alexander turned to him and angrily stated "I will tell you this, [d]on't you ever touch me like that again." ECF 63-2, Ex. E at 2. The record indicates that twelve other inmates received pat-downs upon reentry to the housing pod and no other complaints were registered with jail staff. ECF No. 48-4.

Interpreting Alexander's statement as threatening, Officer Kubat spoke to Defendant Sergeant Olson-Cowden about the incident at approximately 11:40 a.m. ECF No. 63-2, Ex. E at 2. During their conversation, Officer Kubat disclosed that it was possible that he "bumped something on Inmate Alexander as [he] was coming down [Alexander's] thigh." *Id*. Officer Kubat emphasized

3

that Alexander's uniform was quite baggy, which made performing the pat down difficult. *Id*. Based on Alexander's purported threatening behavior, Officer Kubat charged Alexander with a "major violation no. 4" for use of threatening or intimidating behavior towards an officer. *Id*.[2]

C.    **Steele County Sheriff's Office investigation.**

Upon learning of Alexander's sexual assault allegation against Officer Kubat, jail administrator Dan Schember reported the incident to the Steele County Sheriff's Office in accordance with sheriff office procedure. ECF No.65 ¶ 3. Officer Gary Okins of the sheriff's department conducted an external investigation of the incident. *Id*. Officer Okins interviewed both Alexander and Officer Kubat and reviewed jail records. ECF No. 48. Officer Okins then relayed the incident to Steele County Attorney Dan McInstosh, who directed Okins to close the investigation as there was "no intent and no crime doing a pat down which is the Correctional Officer[']s job." ECF No. 48-3.

D.    **Transfer to intake/segregation and disciplinary actions.**

Pursuant to Officer Kubat charging Alexander with a "major violation no. 4," Sergeant Olson-Cowden directed Officers Adil Lebgue, Jason Krohn and Chad Fisher to transfer Alexander from his current housing to the medium male pod for a 3–day lockdown. ECF No. 63-2 at Ex. E at 4. On July 9, 2010 (the same day as the pat-down in question) at approximately 12:15 p.m., officers

---

[2]    Both parties reference a video recording of the pat-down incident in support of their respective version of events. *See* ECF No. 63-2, Ex. F. The Court has carefully reviewed the video and concludes that it is not informative regarding how the pat-down was conducted—i.e., whether or not Officer Kubat inappropriately grabbed Alexander's penis and testicles. Although a wall largely obstructs the pat-down from view, Officer Kubat's pat-down of Alexander's left side is visible and it appears that this portion of the search was completed without incident. However, the pat-down of Alexander's right side is out of view. Whether or not Alexander grabbed Officer Kubat's right hand to stop the pat-down is also not visible in the video.

4

informed Alexander that he was being transferred for lockdown and the officers temporarily transferred Alexander to another cell without incident. *Id*. Once transferred, Alexander refused to change into a "black and white" uniform in accordance with jail lockdown policy. *Id*. Although the officers explained that the black and white uniform was standard procedure, Alexander continued to refused to change, claiming that "[he] didn't do anything wrong." Officers then relocated Alexander to an intake cell and charged him with two subsequent violations: (1) failure to obey a direct order and (2) interfering or disrupting jail operations. *Id*.

**E.     Additional altercations with jail staff on July 10, 2010.**

Alexander claims that, due to his sexual assault allegation against Officer Kubat, Defendants Sergeant Olson-Cowden, Administrator Schember and Officer Krohn retaliated against him in various ways between July 10, 2011 and July 12, 2010. ECF No. 1-1 ¶¶ 3-8.

On the morning of July 10, 2010 between 6 and 7 a.m., Officer Krohn attempted to deliver breakfast to Alexander in intake. Alexander reports that Officer Krohn taunted him with a tray of food and subsequently threw the tray on the floor. ECF No. 46 at 16-17. Contrastingly, Officer Krohn wrote in an incident report that, after handing Alexander the breakfast tray, Alexander "took the tray and threw it across the room." ECF No. 63-2, Ex. E at 7.

Sergeant Olson-Cowden was nearby and "heard a load clatter." *Id*. at 8. Upon arriving at Alexander's cell, Sergeant Olson-Cowden observed food on the floor. *Id*. Due to the incident, she ordered that Alexander's subsequent meals should consist of "nutra loaf."*Id*. Alexander was charged with a violation for "behavior that threatens the safety/security of staff to a major degree." *Id*. at 7. Sergeant Olson-Cowden then had a discussion with Alexander about his behavior. *Id*. at 8. Sergeant Olson-Cowden claims that Alexander repeated his sexual assault allegation against Officer Kubat

and stated that he would "go to extremes" to get his point across. *Id*. During the course of the conversation, Alexander requested hygiene items and bedding. *Id*. Sergeant Olson-Cowden reports that she then provided Alexander with "all D-Seg hygiene items, 2 bars of soap, a soap dish, a comb, bottle of shampoo, tube of toothpaste and a D-Seg toothbrush and bedding, pillow, flat sheet, fitted sheet, and a blanket." *Id*.

Alexander alleges that Sergeant Olson-Cowden visited him several times throughout the course of the morning on July 10, 2010 to alert him to additional disciplinary charges being brought against him. ECF No. 46 at 17. According to Alexander, Olson-Cowden verbally taunted him and handed him legal papers which included a divorce petition from his wife. ECF No. 46 at 17-18. Additionally, Alexander claims that after he ignored Sergeant Olson-Cowden's taunts, she destroyed several manuscripts he had written throughout the course of his detainment at the jail. *Id*. at 18.

At lunchtime on July 10, 2010 Officer Krohn delivered a nutra loaf lunch to Alexander. ECF No. 63-2, Ex. E at 9. Officer Krohn maintains that as he attempted to hand over the lunch bag, Alexander "pushed up against the door preventing me from immediately closing it. He then crushed the bag in his hands, spraying the milk and food all over the floor, walls and myself." *Id*. at 9. In contrast, Alexander claims that Officer Krohn slammed Alexander's arms in the cell door after Alexander attempted to retrieve his lunch bag. ECF No.1-1 ¶ 8. Alexander was charged with a violation for "tampering with or blocking any locking device." ECF No. 63-2, Ex. E at 9.

**F.      Alexander's request for a psychologist.**

On the morning of July 11, 2010, Alexander requested to see a psychologist. *Id*. at 10-11. The officer on duty informed Sergeant Olson-Cowden of the request. *Id*. Olson-Cowden then spoke with Alexander, explaining that the detention center did not have immediate access to a psychologist

on Sundays. Olson-Cowden Decl., ECF No. 66 ¶ 10. Olson-Cowden assured Alexander that she

would refer his request to medical staff so that it could be addressed the following day. *Id*.

Alexander became visibly upset, kicking the walls of his cell, yelling, and threatening to kill

Sergeant Olson- Cowden. ECF No. 63-2, Ex. E at 10-11. The next day, July 12, 2010, Alexander

returned to DOC custody. ECF No. 66 ¶ 10.

**G.      Alexander's transfer on July 12, 2009 and disciplinary hearing.**

On July 12, 2010, Alexander was transferred back to DOC custody. *Id*. As a result of the

additional disciplinary charges he received while detained at Steele County Detention Center,

Alexander claims that he was transferred to MCF-Stillwater, where he received a due process

hearing. ECF No. 46 at 23.  Alexander further alleges that Sergeant Olson-Cowden perjured herself

by giving false testimony at the hearing. *Id*.

Defendants assert that during the course of Alexander's DOC disciplinary hearing,

Alexander admitted to several of the events surrounding the disciplinary charges brought against him

by jail staff. Def's Mem. in Supp. of Mot. for Summ. J. 15, ECF No. 62. In a "hearing findings

report" submitted by Alexander, the hearing officer stated that Alexander admitted to several rule

violations for "disobeying a direct order," "threatening others," and "disorderly conduct." Hearing

Findings Report, ECF No. 52-1 at 1-2. The hearing report additionally indicated that, after a review

of incident reports, video evidence, and testimony from Sergeant Olson-Cowden, a preponderance

of the evidence supported a guilty finding for interfering with security procedures and assaulting

staff. *Id*. at 2.

**H.      Claims alleged by Alexander.**

Construing Alexander's complaint liberally, Alexander brings individual and official

7

capacity § 1983 claims against Steele County Detention Center employees Sergeant Richelle Olson-Cowden, Officer Al Kubat, Officer Jason Krohn, and Officer Dan Schember for: (1) Eighth Amendment cruel and unusual punishment violations; (2) first amendment retaliation violations, (3) equal protection violations; and (4) due process violations for destruction of property. [3] The complaint additionally names the "Steele County Jail" as a defendant.

## II.   STANDARD OF REVIEW

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To support an assertion that a fact cannot be or is genuinely disputed, a party must cite "to particular parts of materials in the record," show "that the materials cited do not establish the absence or presence of a genuine dispute," or establish "that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)-(B). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). In determining whether summary judgment is appropriate, a court must look at the record and any inferences to be drawn from it in the light most favorable to the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## III.   ANALYSIS

---

[3]

In Alexander's motion for summary judgment, he levies a variety of additional allegations pertaining to the treatment he received at Steele County Detention Center prior to the sexual assault incident, including claims that he was inappropriately placed in special housing and was denied hygiene supplies, access to Christian services, and access to a barber. *See* ECF No. 46 at 3-4. Alexander's complaint solely references incidences pertaining to the sexual assault and subsequent actions taken by jail staff, specifically referencing the time frame of July 9, 2010 to July 25, 2010. *See generally*, ECF No. 1-1. Accordingly, these allegations were not properly pled in the complaint and therefore will not be addressed by the Court.

8

A.      **Section 1983 individual capacity claims**.

42 U.S.C. § 1983 provides the following:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the depravation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law.

In order "[t]o state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Here, Defendants do not dispute that they were acting under the color of state law. Thus, the sole question remaining  is whether Defendants' conduct deprived Alexander of constitutionally protected rights.

1.      **Eighth Amendment Claims**

The Eighth Amendment prohibits cruel and unusual punishment by encompassing " broad and idealistic concepts of dignity, civilized standards, humanity, and decency against which we must evaluate penal measures." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (internal citation and quotation omitted). To successfully bring an Eighth Amendment claim, a plaintiff must prove that he or she suffered an "unnecessary and wanton infliction of pain." *Wilson v. Seiter*, 501 U.S. 294, 297 (1991) (citations omitted). However, the applicable legal standard is dependent upon the particular action complained of by the plaintiff. *Berryhill v. Schriro*, 137 F.3d 1073, 1076 (8th Cir. 1998) (citing *Whitley v. Albers*, 475 U.S. 312, 320 (1986)). Alexander asserts several theories of liability under the Eighth Amendment, claiming constitutional violations for sexual assault, conditions of confinement, and inadequate medical care. Each issue will be addressed in turn.

i.      **Sexual assault.**

Alexander claims that Officer Kubat violated his Eighth Amendment rights when he grabbed his penis and testicles during the course of the July 9, 2010 pat-down search. ECF No. 1-1 ¶ 3. "[B]ecause the sexual harassment or abuse of an inmate by a corrections officer can never serve a legitimate penological purpose and may well result in severe physical and psychological harm, such abuse can, in certain circumstances, constitute the 'unnecessary and wanton infliction of pain' forbidden by the Eighth Amendment." *Freitas v. Ault*, 109 F.3d 1335, 1338 (8th Cir. 1997) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). To prevail on an Eighth Amendment claim, a plaintiff must show that (1) the actions at issue were  objectively and sufficiently serious and (2) that the defendant acted with a "sufficiently culpable state of mind." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). For this second prong, an officer is "sufficiently culpable" when he or she subjectively acted with deliberate indifference to an inmate's health or safety. *Id.*; *see also Berryhill v. Schriro*, 137 F.3d 1073, 1075 (8th Cir. 1998) (applying the Eighth Amendment's deliberate indifference standard to a prison sexual harassment claim).

In *Berryhill v. Schriro*, the Eighth Circuit addressed an Eighth Amendment claim pertaining to an  incident of unwanted sexual touching within the prison context. *See Berryhill*, 137 F.3d at 1073.  In that case, the plaintiff alleged that civilian maintenance workers grabbed his buttocks in an incident that spanned less than a minute. *Id.* at 1074-75. As a result of the incident, the plaintiff reported experiencing psychological distress and asthma attacks. *Id.* at 1075. The court concluded that because plaintiff suffered nothing more "than a brief unwanted touch on his buttocks," no Eighth Amendment violation occurred. *Id.* at 1076-77. The Eighth Circuit further held that the facts alleged where a "far cry" from the allegations in alternative cases which withstood summary

judgment. *Id.* at 1077; *see, e.g., Seltzer-Bey v. Delo*, 66 F.3d 961, 962-63 (8th Cir. 1995) (reversing grant of summary judgment where plaintiff alleged sexual assault by a prison official, frequent strip searches accompanied by sexual comments, and an incident where a prison official rubbed the plaintiff's buttocks with a night stick during a strip search);*Watson v. Jones*, 980 F.2d 1165, 1166 (8th Cir. 1992) (reversing summary judgment where plaintiffs alleged that they were subjected to almost daily harassing pat-down searches).

Moreover, numerous other courts have examined precisely the factual allegations at issue in this case—that is, alleged brief sexual touching during the course of a pat-down search—and found that such instances do not rise to the level of an Eighth Amendment violation. *See, e.g., Tuttle v. Carroll Cnty. Detention Ctr.*, 500 F. App'x 480 (6th Cir. 2010) (affirming district court's dismissal of a § 1983 claim for failure to state a constitutional claim where the plaintiff alleged a police officer "grabbed [the plaintiff's] privates and squeezed them really hard" during a pat-down search); *Rhoten v. Werholtz*, 243 Fed. Appx. 364 (10th Cir. 2007) (holding that plaintiff failed to state an Eighth Amendment claim in alleging that during a pat down search, an officer "slammed him against the wall, squeezed his nipples real hard, squeezed his buttocks, and pulled his testicles"); *Davis v. Castleberry*, 364 F. Supp. 2d 319, 321-22 (W.D.N.Y. 2005) (holding that allegation of an officer grabbing an inmate's penis during a routine pat-down search  did not state a constitutional claim and further stating that an effective pat-down search may require touching an inmate's genital area).

Here, Officer Al Kubat denies that he inappropriately grabbed Alexander's genitalia, stating that, at most, he may have "brushed" against something when completing the pat-down. ECF No. 67 ¶ 6. Nevertheless, for the purposes of Defendants' motion for summary judgment, the Court must

11

make all reasonable inferences in favor of Alexander. To this end, the Court accepts Alexander's claim that Officer Kubat grabbed his penis and testicles during the pat-down. However, in accordance with the cases cited above, such conduct is not objectively "sufficiently serious" to constitute an Eighth Amendment claim. As in *Berryhill*, Alexander experienced a minor, isolated incident of unwanted sexual touching. *See* 137 F.3d at 1073. Alexander's pat-down was consistent with jail procedure, which required that inmates undergo a pat-down search upon returning to a housing pod unit.

Furthermore, although the record indicates that Alexander requested medical treatment from a jail psychologist at some point after the incident, the record is void of any evidence showing that Alexander suffered from some form of actual injury. *Berryhill* specifies that "[d]emonstrating a serious or permanent injury is not required to make out an Eighth Amendment claim, but some actual injury must be shown and the extent of the injury and pain suffered are relevant concerns in determining whether the conduct amounts to cruel and unusual punishment." 137 F.3d at 1076-77 (citing *White v. Holmes*, 21 F.3d 277, 281 (8th Cir. 1994)). Alexander's request to see a psychologist is insufficient evidence for the Court to conclude that Alexander suffered from an actual injury, or even that there was a genuine issue of material fact pertaining to this point.

For the above stated reasons, the Court recommends granting Defendants' motion for summary judgment on Alexander's Eighth Amendment sexual assault claim.

### ii. Conditions of confinement.

Alexander maintains that he was denied access to various hygiene items, bedding, and food while detained at the Steele County Detention Center. *See* ECF No. 1-1 ¶¶ 5-6. Alexander specifically asserts that he was forced to sleep on the floor, denied food, bedding, drinking cups, and

toilet paper, and prevented from showering and accessing the telephone. *See* ECF No. 1-1 ¶ 6. In

support of these allegations, Alexander references a report written by Sergeant Olson-Cowden on

July 10, 2010 in which she states that

> [a]fter speaking with [Alexander], he stated that he would like some hygiene and
> bedding. Officer Krohn and I brought him all D-Seg hygiene items, 2 bars of soap,
> a soap dish, a comb, bottle of shampoo, tube of toothpaste and a D-Seg toothbrush
> and bedding, pillow, flat sheet, fitted sheet and a blanket.

ECF No. 46 at 16.

The conditions under which a prisoner is confined are "subject to scrutiny under the Eighth

Amendment." *Farmer*, 511 U.S. at  832 (citing *Helling v. McKinney*, 509 U.S. 25, 31 (1993)). The

Eighth Amendment requires prison officials to provide "humane conditions of confinement" which

includes ensuring prisoners "receive adequate food, clothing, shelter, and medical care." *Id*.

To succeed on an Eighth Amendment conditions of confinement claim, a plaintiff must prove

"both an objective element, which asks whether the deprivation was sufficiently serious, and a

subjective element, which asks whether the defendant officials acted with a sufficiently culpable

state of mind." *Choate v. Lockhart*, 7 F.3d 1370, 1373 (8th Cir. 1993) (citing *Wilson v. Seiter*, 501

U.S. 294 (1991)). As to the objective element, a condition is "sufficiently serious" when "the prison

official's act or omission [results] in the denial of 'the minimal civilized measure of life's

necessities'" or the prison official implements conditions which impose "a substantial risk of serious

harm." *Simmons v. Cook*, 154 F.3d 805, 807 (8th Cir. 1998) (quoting *Farmer*, 511 U.S. at 832). The

subjective element of deliberate indifference mandates a showing that the prison official in question

was aware of an existing risk, but yet chose to disregard that risk. *Spruce v. Sargent*, 149 F.3d 783,

785 (8th Cir. 1998) (citing *Farmer,* 511 U.S. at 837).

Courts have analyzed the constitutionality of confinement conditions similar to those alleged

13

by Alexander. In *Williams v. Delo*, the Eighth Circuit analyzed a prisoner's § 1983 claim relating to an incident where the prisoner was placed in an administrative segregation cell for four days without clothing, running water, or a mattress. 49 F.3d 442, 444 (8th Cir. 1995). At various times the plaintiff requested a tooth brush, tooth paste, deodorant, soap, bedding, pillows, a mattress, legal mail and clothing—all of which prison officials denied. *Id*. The Eighth Circuit concluded that the plaintiff was not denied "the minimal civilized measure of life's necessities" while in the strip cell and therefore, "the conditions [the plaintiff] encountered in temporary administrative segregation did not violate the Eighth Amendment." *Id*. at 447.

Accordingly, to the extent Alexander alleges that he was forced to sleep on the floor and denied various bedding and hygiene items, such deprivations are not "sufficiently serious" to support an Eighth Amendment violation. Alexander was moved to segregation on July 9, 2010 and according to Alexander, he was provided with the above items on the following day, July 10, 2010. ECF No. 46 at 16. Therefore, at most, Alexander was deprived of the above items for one night, conditions which pale in comparison to the factual allegations of *Williams* where the Eighth Circuit found no constitutional violation.

With respect to withholding food from prisoners, it is clear that prisoners have a constitutional right to nutritionally adequate food. *Wishon v. Gammon*, 978 F.2d 446, 449 (8th Cir. 1992). However, courts have also found that "[t]he deprivation of food constitutes cruel and unusual punishment only if it denies a prisoner the minimal civilized measure of life's necessities." *Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999) (internal citations and quotation omitted); *see also, Williams v. Harness*, 221 F.3d 1346 (8th Cir. 2000) (unpublished) (affirming a finding that denying a prisoner one meal does not give rise to a constitutional violation).

14

The Court identified two incidences in the record where Alexander may not have consumed food offered to him—breakfast on the morning of July 10, 2010 (where Alexander alleges an officer threw his tray on the floor) and lunch on July 10, 2010 (where Alexander's nutra loaf was crushed during an altercation with an officer). ECF No. 46 at 16; ECF No. 1-1 ¶ 8. Even if Alexander was deprived of these meals, he certainly was not denied the "minimal civilized measure of life's necessities" required for an Eighth Amendment violation. *See e.g., Wishon*, 978 F.2d at 449 (affirming summary judgment when plaintiff provided "no evidence that the food he was served was nutritionally inadequate or prepared in a manner presenting an immediate danger to his health, or that his health suffered as a result of the food). Accordingly, Defendants are entitled to summary judgement on Alexander's Eighth Amendment conditions of confinement claim.

### iii.    Denial of medical treatment.

Alexander alleges that Sergeant Olson-Cowden violated his Eighth Amendment rights by refusing to provide him access to a psychologist after the pat-down incident. ECF No. 1-1 ¶ 6. It is well established that a prison official violates an inmate's right to be free from cruel and unusual punishment when he or she demonstrates "deliberate indifference" to an inmate's serious medical need. *Estelle*, 429 U.S. at 105 (holding that deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain" proscribed by the Eighth Amendment). "Where a prisoner needs medical treatment prison officials are under a constitutional duty to see that it is furnished." *Crooks v. Nix*, 872 F.2d 800, 804 (8th Cir. 1989) (citing *Estelle*, 429 U.S. at 103)).

To prove such a claim under the Eighth Amendment, a plaintiff must establish that (1) he or she suffered from an objectively serious medical need and (2) the prison officials knew of, but

15

deliberately disregarded, that need. *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000) (internal quotation and citation omitted). The Eighth Circuit defines a serious medical need as one that "has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995) (citing *Johnson v. Busby*, 953 F.2d 349, 351 (8th Cir. 1991)). "A showing of deliberate indifference is greater than gross negligence and requires more than mere disagreement with treatment decisions." *Gibson v. Weber*, 433 F.3d 642, 646 (8th Cir. 2006).

Alexander fails to present any evidence that he suffered from an objectively serious medical need after the pat-down incident. Rather, Alexander offers only blanket assertions that he "suffered an emotional trauma of being sexually assaulted" and that he "still [has] issues with finding myself acting overly masculine in situations." ECF No. 46 at 18. Furthermore, Alexander submitted no evidence documenting any specific diagnosis and treatment.

The Court does, however, acknowledge that Alexander exhibited hostile behavior on July 11, 2009 after being informed that a jail psychologist was not immediately available. *See* ECF No. 63-2, Ex. E at 10-11. Specifically, officers observed Alexander kicking, making threatening statements, and rocking back and forth in his cell. *Id.* Assuming, arguendo, that Alexander suffered from a severe psychological need such that a layperson could "easily recognize the necessity for a doctor's attention," there is no indication that Sergeant Olson-Cowden was deliberately indifferent to that need. The record reflects that Alexander first requested to see a psychologist on July 11, 2014. *Id.* at 11. The jail did not have a mental health professional immediately available, but Sergeant Olson-Cowden arranged to place a referral in order to accommodate Alexander's request. *Id.* However, Alexander was transferred out of the jail the next day. ECF No. 66 ¶ 10. Thus,

Sergeant Olson-Cowden did not disregard a risk to Alexander's health, but instead affirmatively acted to provide him with care. *See Long v. Nix*, 86 F.3d 761, 765 (8th Cir. 1996) ("[T]he failure to treat a medical condition does not constitute punishment within the meaning of the Eighth Amendment unless prison officials knew that the condition created an excessive risk to the inmate's health and then failed to act on that knowledge."). As such, no genuine issue of material fact is present on Alexander's Eighth Amendment claim for denial of medical treatment and Defendants are entitled to judgment as a matter of law.

### 2.    First Amendment retaliation claims.

Alexander asserts numerous retaliation claims against all Defendants, generally arguing that the officers retaliated against him because of his sexual assault allegation against Officer Kubat.

In order to establish a First Amendment retaliation claim under § 1983, a plaintiff must show that (1) he was engaging in a constitutionally protected activity, (2) a government official took some form of adverse action against him that would chill a person of ordinary firmness from continuing the protected activity, and (3) that the adverse action was motivated, at least in part, by the plaintiff engaging in the constitutionally protected activity. *Naucke v. City of Park Hills*, 284 F.3d 923, 927-28 (8th Cir. 2002) (citing *Carroll v. Pfeffer*, 262 F.3d 847, 850 (8th Cir. 2001)). A prisoner's ability to file a grievance is protected by the First Amendment. *Lewis v. Jacks*, 486 F.3d 1025, 1029 (8th Cir. 2007) (citing *Dixon v. Brown*, 38 F.3d 379, 379 (8th Cir. 1994)). Therefore, when a prisoner plaintiff asserts a First Amendment retaliation claim, the plaintiff must show that alleged retaliatory action was sufficiently severe to "chill an inmate of ordinary firmness from filing grievances." *Id.* at 1029.

The Court construes Alexander's complaint to assert retaliation claims pertaining to (1) the

filing of false disciplinary charges, (2) Alexander's transfer to disciplinary segregation and MCF-Stillwater, (3) taunting behavior from jail officials, and (4) a failure to properly investigate Alexander's sexual assault allegation. *See generally* ECF No. 1-1.

i.     **False disciplinary charges.**

Alexander asserts that Officer Kubat and Sergeant Olson-Cowden filed false disciplinary charges against him in retaliation for Alexander's sexual assault claim. ECF No. 1-1 ¶¶ 3,7. "While a prisoner can state a claim of retaliation by alleging that disciplinary actions were based on false allegations, no claim can be stated when the alleged retaliation arose form discipline imparted for acts that a prisoner was not entitled to perform." *Orebaugh v. Caspari*, 910 F.2d 526, 528 (8th Cir. 1990). In other words, if the disciplinary charge a prisoner claims is retaliatory was "in fact imposed for an actual violation of prisoner rules or regulations," the retaliation claim fails. *Goff v. Burton*, 7 F.3d 734, 738 (8th Cir. 1993). Thus, an officer successfully defends a retaliatory discipline claim by offering "some evidence" that the inmate actually violated a rule. *Hartsfield v. Nichols*, 511 F.3d 826, 829 (8th Cir. 2008) (citing *Goff*, 7 F.3d at 738-39).

Here, the record reflects that disciplinary actions taken by Officer Kubat and Sergeant Olson-Cowden were in response to "actual violation[s] of prisoner rules and regulations." Officer Kubat charged Alexander for threatening comments made during the pat-down incident. ECF No. 63-2 at 2-3. Tellingly, Alexander admitted to threatening others at his disciplinary hearing at MCF-Stillwater. ECF No. 52-1 at 1-2. Likewise, Sergeant Olson-Cowden informed Alexander of various disciplinary charges brought against him over the course of his incarceration at the detainment center; these charges related to Alexander's refusal to change uniform, destruction of food, and threatening behavior. ECF No. 63-2, Ex. E at 4-11. The disciplinary charges brought by Officer

Kubat and Sergeant Olson-Cowden are well documented by officer incident reports. *See generally*, ECF No. 63-2, Ex. E. As a result, "some evidence" exists which supports a finding that the additional disciplinary charges brought against Alexander were a result of actual violations.

### ii.     Transfers to segregation and to MCF-Stillwater.

Alexander claims that Administrator Schember and Sergeant Olson-Cowden improperly transferred him to segregation within the detention center and later to MCF-Stillwater. ECF No. 1-1 ¶ 4; ECF No. 46 at 12. When an inmate claims that he or she was transferred in retaliation for engaging in constitutionally protected behavior, the inmate must show that the transfer would not have occurred *but for* the alleged retaliatory purposes. *See Ponchik v. Bogan*, 929 F.2d 419, 420 (8th Cir. 1991) (affirming summary judgment where district court applied the "but for" test to an alleged retaliatory transfer).

Alexander fails to raise a genuine issue of material fact regarding his transfer to both segregation and MCF-Stillwater, providing no evidence that *but for* the alleged retaliatory purposes, he would not have been transferred. Indeed, Alexander admitted at his due process hearing to several of the violations which led to additional disciplinary charges. ECF No. 52-1 at 1-2.  Accordingly, jail staff had a legitimate reason to place Alexander in segregation and transfer him to MCF-Stillwater for a due process hearing pertaining to these disciplinary charges. *See Kind v. Frank*, 329 F.3d 979, 981 (D. Minn. 2003) (granting summary judgment on a retaliation claim when the "record demonstrates that [plaintiff] was disciplined and transferred due to a pattern of misbehavior and repeated violations of the jail's rules of conduct.").

### iii.     Taunting behavior.

Alexander generally alleges that Sergeant Olson-Cowden and Officer Jason Krohn engaged

in taunting behaviors with retaliatory motive. ECF No. 1-1 ¶¶ 5-8. Specifically, Alexander claims

that Sergeant Olson-Cowden verbally taunted him and provided him with a divorce petition. ECF

No. 1-1 ¶ 5. Additionally, Alexander asserts that Officer Krohn threw a food tray at him, pushed him

into a door when Alexander was attempting to retrieve his food bag, and pointed a taser at him. ECF

No. 1-1 ¶ 8. Alexander provided no evidence pertaining to these events beyond his own assertion

that they took place and has offered no evidence in support of his contention that the events were

done in retaliation. Consequently, no genuine issue of material fact exists.

### iv.    Failure to investigate—Dan Schember.

Finally, Alexander alleges that Jail Administrator Schember retaliated against him by failing

to investigate his alleged sexual assault. ECF No. 1-1 ¶ 4. Alexander's claim against Schember fails

because the record shows that the pat-down incident was investigated. In fact, Alexander relies, in

part, on evidence that defeats this claim. Specifically, Alexander offers as evidence Steele County

Sheriff Officer Gary Okins' written report that resulted from the investigation. *See* ECF No. 48-2.

As such, no genuine issue of material fact on this claim is present.

For the above stated reasons, Defendants are entitled to judgment as a matter of law on

Alexander's First Amendment retaliation claims.

### 3.    Equal Protection claims.

Alexander's complaint states that his "right to equal protection under the law" was violated.

To prevail on an equal protection claim, Alexander would need to show that he was "treated

differently from similarly situated inmates at [Steele County Jail] and that there was no rational basis

related to a legitimate state purpose for the unequal treatment." *Wishon v. Gammon*, 978 F.2d 446,

450 (8th Cir. 1992) (citing *McGowan v. Maryland*, 366 U.S. 420, 425 (1961)). Nowhere in

20

Alexander's complaint does he allege that he was treated differently from similarly situated inmates or that the alleged unlawful activity of jail staff was improperly motivated. Alexander asserted no factual basis for an equal protection claim; therefore, no genuine issue of material fact remains pertaining to this claim and summary judgment is appropriate.

### 4. Seizure of Property claim.

Alexander asserts that Sergeant Olson-Cowden violated his constitutional rights when she destroyed manuscripts Alexander wrote while incarcerated at the detention center. ECF No. 1-1 ¶ 6. Claims related to seizure of an inmates property are properly evaluated under the Fourteenth Amendment's Due Process Clause. *Baasi v. Fabian*, Civ09-781, 2010 WL 924384 (D. Minn. Mar. 11, 2010) ("[T]he Courts that have addressed the question of a seizure of an inmate's property have analyzed such a deprivation under the Due Process rubric.") (internal citations omitted), aff'd 391 F. App'x 571 (8th Cir. 2010).  Further, the Supreme Court held in *Hudson v. Palmer* that "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment, if a meaningful postdeprivation for the loss is available." 468 U.S. 517, 533 (1984). Here, an adequate post-deprivation remedy exists in the form of a state law conversion claim. *See Carniglia v. Dearmon*, 16 Fed. Appx. 548, 549 (8th Cir. 2001) (noting that conversion is a post-deprivation remedy under state law); *Hildegarde, Inc. v. Wright*, 244 Minn. 410, 413 (Minn. 1995) (recognizing the tort of conversion under Minnesota law). Because an adequate post-deprivation remedy of conversion is available to Alexander, the seizure of property claim fails as a matter of law.

### 5. Qualified Immunity.

The doctrine of qualified immunity protects government actors from personal liability under

a § 1983 claim "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The "driving force" behind the creation of the doctrine was to eliminate insubstantial claims against government officials prior to discovery. *Anderson v. Crieghton*, 483 U.S. 635, 640 n.2 (1987).

Two questions are considered to determine whether officials are protected by qualified immunity: (1) whether the facts alleged, viewed in the plaintiff's favor, support a finding that the conduct of the defendants violated a constitutional right; and (2) whether that constitutional right was "clearly established" at the time of the incident such that a reasonable officer would have known that his or her actions were unlawful. *Pearson*, 555 U.S. at 232. The order in which the qualified immunity prongs are addressed is left to this Court's discretion. *Id*. at. 236. "Qualified immunity is appropriate only if no reasonable fact-finder could answer yes to both of these questions." *Nelson v. Corr. Med. Servs.*, 583 F.3d 522, 528 (8th Cir. 2009).

Alexander does not address the issue of qualified immunity in his memoranda. *See generally*, ECF No. 46. Defendants, however, argue that they are entitled to qualified immunity as no constitutional violations occurred. ECF No. 62 at 39.  Moreover, Defendants maintain that even if constitutional claims existed, "there is no allegation or evidence that Defendants should have known that their actions were objectively unreasonable or would amount to a constitutional violation." *Id*.

The Court agrees with Defendants in that having concluded that no constitutional violations occurred, there is no need to address whether the constitutional right was clearly established at the time of the alleged violations. *See Fields v. Abbott*, 652 F.3d 886, 894 (8th Cir. 2011) (stating that, having found Defendants did not violate Plaintiff's constitutional rights, the Court need not address

the other prong of the qualified immunity analysis–whether the constitutional right at issue was clearly established) (citing *Avalos v. City of Glenwood*, 382 F.3d 792, 801 (8th Cir. 2004)).

**B.     Section 1983 Official Capacity Claims.**

Alexander's section 1983 official capacity claims additionally fail.  "A suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent." *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)); *see also Brandon v. Holt*, 469 U.S. 464, 471 (1985) ("[J]udgment against a public servant 'in his official capacity' imposes liability on the entity that he represents provided, of course, the public entity received notice and an opportunity to respond.").

For official capacity liability, the government entity itself must be the "moving force" behind the constitutional violation. *Polk County v. Dodson*, 454 U.S. 312, 326 (1981) (citing *Monell v. New York City Dept. of Soc. Serv.*, 436 U.S. 658, 694 (1978)). This is established by showing that the entity has a policy or custom that  contributed to a violation of federal law. *Graham*, 473 U.S. at 166 (citations omitted).  As stated by the Supreme Court in *Monell v. New York City Department of Social Services*, "[i]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." 436 U.S. at 694.

Here, Alexander fails to allege any policy that violated his constitutional rights. Although Alexander asserts extensive allegations pertaining to the actions of individual jail officials, he does not argue that any such actions are the result of a "constitutionally forbidden rule or procedure" instituted by Steele County. *See Polk County*, 454 U.S. at 326 (dismissing § 1983 official capacity claims when Plaintiff "failed to allege that [a constitutional] deprivation was caused by any

constitutionally forbidden rule or procedure."). Accordingly, no genuine issue of material fact remains to this claim and Defendants are entitled to its dismissal as a matter of law.

**C.      Steele County Jail.**

Finally, all claims against Steele County Jail should be dismissed. Steele County Jail is not a legal entity that stands separate and apart from Steele County and therefore it is not subject to suit. *Ketchum v. City of West Memphis,* 974 F.2d 81, 82 (8th Cir. 1992) (departments or subdivisions of local governments are "not judicial entities suable as such"); *see also In re Scott County Master Docket*, 672 F. Supp. 1152, 1163, n.1 (D. Minn. 1987) (finding that a sheriff department is not a legal entity subject to suit), aff'd, *Myers v. Scott County*, 868 F.2d 1017 (8th Cir. 1989). Absent some statutory authorization permitting suit against Steele County Detention Center, all claims against the jail should be dismissed.

## III.     CONCLUSION

Alexander has provided little more than his own assertions to support his claims for the assorted alleged constitutional violations addressed above. "A mere scintilla of evidence is insufficient to avoid summary judgment." *Mood v. St. Charles Cnty*, 23 F.3d 1410, 1412 (8th Cir. 1994). The Court concludes that Alexander has not raised a genuine issue of material fact pertaining to any of his claims and, therefore, that Defendants are entitled to judgment as a matter of law.

## IV.     RECOMMENDATION

Based on the foregoing, and all the files, records, and proceedings herein, it is **HEREBY RECOMMENDED** that:

1.      Plaintiff's motion for summary judgment and/or sanctions [ECF No. 46][4] and

---

[4]

Alexander captioned his motion for summary judgment as "motion for summary

motion for entry of judgment [ECF No. 56] should be **DENIED**;

2.       Defendants' motion for summary judgment [ECF No. 60] should be **GRANTED**; and

3.       The case should be **DISMISSED WITH PREJUDICE**.


DATED: July 31, 2014                                         s/Franklin L. Noel

                                                      FRANKLIN L. NOEL
                                                      United States Magistrate Judge

Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **August 14, 2014**, written objections that specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within fourteen (14) days after service thereof.  All briefs filed under the rules shall be limited to 3,500 words. A judge shall make a de novo determination of those portions to which objection is made.

Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed by August 14, 2014 a complete transcript of the hearing.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.

---

judgment and/or sanctions and affidavit of facts." ECF No. 46. Within the memorandum, Alexander argues that he is entitled to sanctions for Defendants' discovery violations. *Id.* at 20-23. To the extent Alexander argues for discovery sanctions, the motion is also **DENIED**. There is no indication that Defendants violated a discovery order. *See* Fed. R. Civ. P. 37(b)(2)(A) (listing sanctions that the Court may impose when a party fails to obey a discovery order).